NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 21, 2015[*]
Decided April 22, 2015

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

| | |
|---|---|
| No. 14-3270 | |
| | Appeal from the |
| ABEL LUCIO, | United States District Court for the |
| *Plaintiff-Appellant*, | Southern District of Illinois. |
| | |
| *v.* | No. 11-cv-00979-MJR-SCW |
| | |
| VENERIO M. SANTOS, et al., | Michael J. Reagan, |
| *Defendants-Appellees*. | *Chief Judge*. |

**O R D E R**

In this action under 42 U.S.C. § 1983 and state law, Illinois prisoner Abel Lucio complains about medical care he received from a prison physician. The district court granted summary judgment for the physician, and Lucio appeals. We affirm the judgment.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

We recount the facts in the light most favorable to Lucio, as the party opposing summary judgment. *See Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). A few days after his transfer to Centralia Correctional Center, Lucio was attacked by two inmates who suspected him of previously working as an informant for prison guards. They wrestled Lucio to the ground, pulled down his pants and underwear, and poked his anus with a hard object while threatening to kill his sister. The next day one of those inmates saw Lucio talking to a guard and started poking him. Lucio responded by hitting the attacker in the face with his Bible. The two men were separated and a guard took Lucio to the infirmary.

A nurse examined Lucio, and then the guard took him to see prison physician Venerio Santos, an employee of Wexford Health Sources. According to Lucio's complaint, he told Dr. Santos that he had not been raped the day before by the two inmates and did not want a rectal exam, but the doctor performed the exam anyway. Lucio was then taken to segregation, where other guards passing by his cell laughed at him, Lucio thought, because he had been sexually assaulted. The next day Lucio tried to kill himself by taking 29 acetaminophen pills. He was briefly hospitalized but, after returning to the prison, assured infirmary staff that he had no other medical problems.

Because of the suicide attempt, Dr. Santos restricted Lucio's access to his monthly allotment of acetaminophen and told Lucio that the medication would be issued as needed. At the time Lucio was sleeping on a hard bunk with no sheets or blankets, and after a few days, he began complaining to nurses that an old shoulder injury had flared up and become painful. He also announced that he was going on a hunger strike. A few days later he complained about his shoulder pain to Dr. Santos, but the physician declined to dispense painkillers because Lucio was on a hunger strike. (Dr. Santos averred that he visited with Lucio and Lucio declined treatment, but we take as true Lucio's version of events.) Lucio saw Dr. Santos again a few days after ending his hunger strike, and this time the doctor prescribed Ibuprofen for Lucio's shoulder. But no one filled that prescription before Lucio was transferred to another prison three days later.

In his complaint Lucio claimed that Dr. Santos had been deliberately indifferent to his shoulder pain by withholding pain medication and had violated Illinois law by performing the rectal exam without consent. Lucio also raised claims against two prison guards, but he has abandoned those claims on appeal, so we need not discuss them further.

In granting summary judgment for Dr. Santos, the district judge first reasoned that Lucio could not prevail on his claim of deliberate indifference because, the judge said, Lucio had not presented evidence that his shoulder pain was objectively serious or that the doctor acted improperly. The judge explained that Dr. Santos had a legitimate medical reason for initially withholding acetaminophen (Lucio's hunger strike would have made taking painkillers harmful) and could not be responsible for other staff who neglected to fill the prescription he issued after Lucio had resumed eating. The judge declined to exercise supplemental jurisdiction over Lucio's state-law claim about the rectal exam.

On appeal Lucio first argues that Dr. Santos's decision to withhold pain medication while he was on his hunger strike went beyond the bounds of professional judgment. He further insists that Dr. Santos, who had seen him only a few times, was deliberately indifferent because, in Lucio's opinion, the doctor must have known about his complaints of pain to the nursing staff and should have known that the prescription he eventually issued did not get filled. Lucio takes issue, too, with the district court's conclusion that his shoulder pain did not constitute a serious medical need. We bypass this last question, however, because we agree with the district court that no inference of deliberate indifference is raised by Lucio's evidence.

To survive summary judgment on his theory that the doctor unconstitutionally denied him acetaminophen during his hunger strike, Lucio needed to present evidence that "no minimally competent" doctor would have made the same decision. *See Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008). Federal courts will not second-guess a prison physician's treatment decision unless that choice was so "significant a departure from accepted professional standards or practices" that it's questionable whether the physician actually exercised professional judgment. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Dr. Santos refused to prescribe acetaminophen while Lucio wasn't eating, and Lucio presented no evidence from which a jury reasonably could infer that the doctor had failed to exercise medically sound judgment. (We note that the literature is inconclusive regarding the extent to which acetaminophen, unlike other over-the-counter painkillers, can be taken on an empty stomach. *Compare* National Consumers League and U.S. Food and Drug Administration, *Avoid Food-Drug Interactions*, http://www.fda.gov/downloads/Drugs/ResourcesForYou/Consumers/BuyingUsing MedicineSafely/EnsuringSafeUseofMedicine/GeneralUseofMedicine/UCM229033.pdf, at 6–7 (no restrictions on taking on empty stomach), *with* DRUGS.COM, Acetaminophen, http://www.drugs.com/cdi/acetaminophen.html (last visited April 22, 2015) (take with

food to avoid stomach upset). And in this case Lucio's hunger strike further complicated the doctor's decision.)

As for the three days that Lucio went without painkillers after he abandoned his hunger strike, Lucio needed evidence that Dr. Santos was aware of, but did nothing to correct, the failure of other medical staff to fill the prescription for Ibuprofen or otherwise address Lucio's shoulder pain. *See Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011); *Hayes v. Snyder*, 546 F.3d 516, 523 (7th Cir. 2008). Lucio's unsubstantiated allegations of knowledge were not a substitute for evidence. *See Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008).

Lucio next argues that the district court erred by declining jurisdiction over his state-law claim. But he does not point to any extraordinary circumstance that would call that decision into question, and thus we have no basis to conclude that the court abused its discretion by declining to exercise supplemental jurisdiction after dismissing all of Lucio's federal claims. *See* 28 U.S.C. § 1367(c)(3); *Capeheart v. Terrell*, 695 F.3d 681, 686 (7th Cir. 2012).

Finally, Lucio argues that it was an abuse of discretion to deny his multiple requests for counsel. But the magistrate judge who handled those requests thoroughly explained his reasoning. The judge evaluated not only whether Lucio had done an adequate job gathering evidence, making his arguments, and understanding the governing laws, but also stated that the request for counsel would be reconsidered at each new stage of the litigation. In this relatively straightforward case, the judge acted within his discretion. *See Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007) (en banc).

Accordingly, we AFFIRM the judgment of the district court.